UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                    Case No. 1:15-CR-221

v.

                                    HON. ROBERT HOLMES BELL

WENDY DARLENE PITTS,

      Defendant.
_____/

**OPINION**

On March 24, 2016, Defendant Pitts pleaded guilty to one count of making a false writing under 18 U.S.C. § 1018 before Magistrate Judge Phillip J. Green. (Written Plea Agreement, ECF No. 23, Plea Hr'g Tr., ECF No. 52.) Upon finding that the plea was knowing and voluntary, and establishing a factual basis for the plea, the Magistrate Judge sentenced Defendant to one year of probation and restitution in the amount of $8,072.04 (ECF No. 41). The matter is before the Court on Defendant's appeal of the Magistrate Judge's decision. (ECF No. 57.) Defendant and the government have filed appeal briefs. (ECF Nos. 60, 61.)

In Defendant's brief, she argues that the Magistrate Judge should have pursued a competency evaluation before accepting her guilty plea. She also asserts that the record is insufficient to show that she made a knowing, intelligent, and voluntary plea of guilty.

I.

The essential facts are not in dispute.  On December 2, 2015, Defendant Pitts was indicted by a grand jury for making a false, fictitious, or fraudulent claim to FEMA, in violation of 18 U.S.C. § 287.  (Indictment, ECF No. 1, PageID.1-2.)  The indictment alleged that Defendant submitted a false claim to FEMA in order to get financial assistance. Specifically, she falsely represented that her residence was located in Detroit, Michigan, when, in fact, she was residing in Lansing, Michigan.  She received $8,072.04 from FEMA for home repair, rental assistance, and personal-property loss.

On March 14, 2016, Defendant pleaded guilty to an amended information, charging Defendant with a misdemeanor violation of 18 U.S.C. § 1018.  (Plea Agreement, ECF No. 23.)  In the written plea agreement, Defendant acknowledged that she was guilty of the charge in the information, and that she understood the crime and the maximum statutory penalties.  (*Id.* at PageID.53-54.)  She also stipulated to the factual basis for guilt.  (*Id.* at PageID.54-55.)  Defendant and her attorney also signed a consent to proceed before a Magistrate Judge, and she expressly waived her right to trial, judgment, and sentencing before a district judge.  (Consent, ECF No. 25, PageID. 64.)

During her Rule 11 plea hearing, the Magistrate Judge ensured that Defendant was able to understand the plea proceedings:

> THE COURT: All right.  Now, before we get into anything else, I also want to make sure that you are of a frame of mind to understand what's going on here this afternoon and to make what may be one of the more important decisions of your life.  Is there anything physically or mentally wrong with you that affects your ability to think clearly?

> DEFENDANT: No.
>
> THE COURT: Are you taking any prescription medication?
>
> DEFENDANT: No.
>
> THE COURT: Any other drugs or alcohol in the last 24 hours?
>
> DEFENDANT: No.
>
> THE COURT: How far did you get in school, Ms. Pitts?
>
> DEFENDANT: Tenth-grade resource classes.
>
> THE COURT: Okay. Do you read and write English?
>
> DEFENDANT: Yes.
>
> THE COURT: Very well. Have you had an opportunity to read and review the Superseding Misdemeanor Information?
>
> DEFENDANT: I had them read to me.
>
> THE COURT: All right. Good. Ms. O'Neill, do you have any reason to believe that Ms. Pitts is not competent to proceed this afternoon?
>
> MS. O'NEILL: I do not, Your Honor. Thank you.

(Plea Hr'g Tr., ECF No. 52, PageID.152-53.) The Magistrate Judge then explained her right to assistance of counsel; she acknowledged this, and stated that she was satisfied with her appointed attorney's representation. (*Id.* at PageID.153.) The Magistrate Judge also informed Defendant of her right to remain silent, and that she would be giving up this right if she pleaded guilty. (*Id.* at PageID.154.) Defendant said that she understood that she was giving up these rights, and that she wanted to proceed to plead guilty. (*Id.*)

Next, the Magistrate Judge summarized the allegations in the misdemeanor

3

information, and confirmed that Defendant understood the nature of the charge, the maximum penalties, and the operation of the sentencing guidelines. (*Id.* at PageID.155-56.) Defendant asked a question about whether she would go to jail, and the Magistrate Judge clarified that jail was the maximum penalty she could receive. (*Id.* at PageID.156.) She responded that she understood this. (*Id.*) Then, the Magistrate Judge discussed in detail how the sentencing calculation would work if she pleaded guilty. (*Id.* at PageID.158-63.)

In addition, the Magistrate Judge discussed Defendant's trial rights. (*Id.* at PageID.163-64.) Defendant acknowledged that she understood her rights, but still wanted to plead guilty. (*Id.* at PageID.164.) The Magistrate Judge then asked whether anyone had threatened, pressured, or promised anything in exchange to pleading guilty. (*Id.*) She agreed that the decision was hers alone, and that she had adequate opportunity to think about it and to discuss it with her attorney. (*Id.* at PageID.165.) The Magistrate Judge then went through and explained each paragraph of the written plea agreement in detail, and she confirmed that she understood it. (*Id.* at PageID.165-178.) Defendant appeared confused about the waiver of venue provision of the plea agreement, and the Magistrate Judge gave her time to talk with her attorney. (*Id.* at PageID.170-71.) After consulting her attorney, she agreed that she understood. (*Id.*)

Subsequently, the Magistrate Judge established a factual basis for the plea by reading aloud paragraph 6 of the plea agreement, and explained in detail the facts underlying her plea. (*Id.* at PageID.178-84.) Defendant admitted that she started a FEMA claim for a

4

commercial building in Detroit that was damaged by a flood. (*Id.* at PageID.178-81.) She also admitted that she falsely told FEMA that she lived in that building at the time of the storm, when she actually lived in Lansing. (*Id.* at PageID.189-90.)

When the Magistrate Judge asked her about the FEMA claim that she signed and submitted, she began to say that she did not read it and suggested it may have been a misunderstanding. (*Id.* at PageID.196.) The Magistrate Judge adjourned the hearing to allow Defendant time to consult with her attorney about it. (*Id.* at PageID.196-97.) About twenty minutes later, Defendant requested to proceed with the factual basis for her guilty plea, and clarified some of her prior statements on the record. (*Id.* at PageID.199-201.) She admitted that she lied about living in the commercial building in Detroit to FEMA, and that she signed a form acknowledging that her statement was true. (*Id.* at PageID.200.) She admitted that she made a false statement, that she knew it was false at the time that she made it, and that it would likely influence FEMA to give her money. (*Id.* at PageID.200-201.) To conclude the plea hearing, both parties and the Magistrate Judge agreed that Defendant had provided a factual basis for the guilty plea, and the Court accepted her plea. (*Id.* at PageID.202.) Afterward, the Magistrate Judge described the next stage of the proceedings, and asked Defendant if she had any questions, to which she responded that she did not have any questions whatsoever. (*Id.* at PageID.202-203.)

After the plea hearing, Defendant sent a letter to the Magistrate Judge. (Letter, ECF No. 27.) In the letter, Defendant accepted "full responsibility for my wrong doing," and requested that the Court "have mercy on me, on my sentencing." (*Id.* at PageID.66-72.) She

also thanked the Court for accepting her guilty plea, and requested that the case be expunged off her record once she paid the money back. (*Id.* at PageID.66, PageID.77.) In the letter, she also claimed that she "did not understand all the meaning of the words" of a legal document that she signed, but did not indicate which legal document or words she did not understand. (*Id.* at PageID.66.) The Magistrate Judge responded and recommended that Defendant consult with her attorney, who could file a motion to address any issues raised in the letter. (Court's Letter, ECF No. 28, PageID.73.) But neither Defendant nor her attorney filed anything in response to the Magistrate Judge's letter.

At the sentencing hearing, the Magistrate Judge began by discussing the Defendant's letter, and expressed his concern that some portions could be read to suggest that she did not know that she submitted a false writing. (Sentencing Tr., ECF No.53, PageID.207-208.) Defendant's counsel restated that she believed that Defendant had provided a factual basis for the plea during the plea hearing and pre-sentence investigation interview, and asked the Court to disregard Defendant's letter. (*Id.* at PageID.208-209.) The Magistrate Judge then read aloud the factual basis for the written plea agreement, and again, Defendant agreed to its truthfulness. (*Id.* at PageID.210-12.) The Magistrate Judge was satisfied, and proceeded with the sentencing hearing. (*Id.* at PageID.212.) He sentenced Defendant to one year of probation and restitution in the amount of $8,072.04. (ECF No. 41).

## II.

This Court has appellate jurisdiction to review Defendant's conviction by the Magistrate Judge under 18 U.S.C. § 3402.

When a defendant challenges her guilty plea's validity on appeal, "[w]e review de novo whether a defendant's plea was entered knowingly, voluntarily, and intelligently; however, '[t]he underlying factual bases relied upon by the district court are reviewed for clear error.'" *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (quoting *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)).

"The long-standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). A guilty plea is valid only if "the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial, *see Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea, *Brady v. United States*, 397 U.S. 742, 748 (1970)." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008). A plea is not intelligent unless a criminal defendant "first receives real notice of the true nature of the charges against [her.]" *Bousley v. United States*, 523 U.S. 614, 618 (1998).

A court must hold a competency hearing before accepting a guilty plea when there is "substantial evidence of a defendant's incompetency." *United States v. Abdulmutallab*, 739 F.3d 891, 899 (6th Cir. 2014). "In order for a court to determine whether a competency hearing was required, the court should consider 'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial[.]'" *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). "No one factor is

determinative of whether further inquiry into a defendant's competency is warranted, but 'even one of these factors standing alone, may, in some circumstances' be sufficient to warrant further inquiry." *Id.*

### III.

Upon review of the plea hearing transcript, there is no evidence to support a suspicion that Defendant was incompetent; she never displayed irrational behavior nor were there any prior medical opinions relating to her competency. Moreover, Defendant denied having anything physically or mentally wrong that would affect her ability to think clearly, and her attorney stated that she did not have any reason to believe that Defendant was not competent to proceed with the plea hearing. (Plea Hr'g Tr., ECF No. 52, PageID.152-53.) Although the pre-sentence report revealed that Defendant had not completed high school and was a special-education student with a fifth-grade reading level, the Magistrate Judge made sure to read aloud the written plea agreement and to explain the factual basis for her plea at both the plea and sentencing hearings.

Defendant demonstrated a clear understanding of the nature of the proceedings, the role of her attorney, and the consequences of pleading guilty. When she had a question about the possibility of jail, she asked the Magistrate Judge about it. The Magistrate Judge also adjourned the plea hearing to give Defendant time to consult her attorney. During the course of her interactions with the Court, Defendant demonstrated an ability to understand the nature and seriousness of the charge, asked questions to clarify when she was uncertain about something, showed a basic understood of the legal concept of venue, recognized the benefit

8

of pleading guilty to a misdemeanor rather than having a felony conviction, understood the consequences of her actions and feared the punishment she might receive, requested help from the Court regarding her public-housing benefits, and unequivocally accepted responsibility for making a false statement during her plea and sentencing hearings.

Defendant argues that because of her lack of education and limited reading comprehension, the terms set forth in the plea agreement and at the hearings would have been beyond her comprehension. Illiteracy, by itself, does not make a defendant incompetent to enter a guilty plea. *See United States v. Barker*, 617 F. App'x 269, 271 (4th Cir. 2015); *see also United States v. Izquierdo*, 448 F.3d 1269, 1270 (11th Cir. 2006); *United States v. Harrina*, No. 88-1452, 1989 WL 124139, at *1 (9th Cir. Oct. 11, 1989). Rather, the court must assess the defendant's behavior and demeanor, taking into account any prior medical opinions as to competency, to determine whether a defendant is competent to stand trial or plead guilty. Based on the transcripts, Defendant did not behave irrationally during the hearings. Further, because of her diminished literacy, the Magistrate Judge took time to read aloud the provisions of the plea agreement and to explain the important facts underlying the guilty plea during two hearings. In addition, Defendant indicated that her attorney had read the written plea agreement aloud to her, and that she had consulted with her attorney about the agreement before the plea hearing. The Magistrate Judge properly concluded that Defendant's plea was knowing, intelligent, and voluntary, and that there was a sufficient factual basis for the plea.

Defendant also argues that her letter showed that she did not understand the charges

9

against her. At the beginning of the sentencing hearing, the Magistrate Judge took time to discuss the letter, and confirmed that she understood the charges against her and the underlying factual basis for her plea. Moreover, Defendant's attorney asked the Court to disregard the letter, and explained that the factual basis for the plea was already established during the plea hearing. The letter also demonstrated Defendant's ability to write in English, and showed she understood the nature and circumstances of the criminal proceedings when she asked for mercy, accepted responsibility for her actions, asked for her record to be expunged after she paid restitution, and explained why she should not lose her public-housing benefits.

Finally, Defendant argues that her in-court statements evidence a clear misunderstanding of what was happening because most of her answers were a simple yes or no in response to the Magistrate Judge's questioning. But this also does not call into question her competency or the validity of her guilty plea. There is "'no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily those answers must be lengthy and all-encompassing; a straightforward and simple, "Yes, your honor" is sufficient to bind a defendant to its consequences.'" *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (quoting *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998)). Further, the Magistrate Judge asked Defendant multiple times during her plea hearing:

> THE COURT: Do you have any questions at this time, Ms. Pitts, as to what's going on?
>
> DEFENDANT: No.

>. . . .
>
>THE COURT: All right. Any questions whatsoever?
>
>DEFENDANT: No.

(Plea Hr'g Tr., ECF No. 52, PageID.203.)

The Court finds that Defendant knowingly, intelligently, and voluntarily pleaded guilty. The Magistrate Judge went through each provision of the written plea agreement and the factual basis for the plea meticulously and patiently to ensure that Defendant's plea was knowingly, intelligently, and voluntarily made. Further, there was no evidence from the Defendant's behavior during the hearings to warrant ordering a mental competency evaluation.

**IV.**

To conclude, Defendant was competent to enter into a guilty plea, and she did so knowingly, intelligently, and voluntarily. Therefore, this Court affirms the judgment. An order will enter in accordance with this opinion.

Dated: <u>December 8, 2016</u>   /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE

11